All right, please call the first case. 323-0174-WC Stephen J. Walsh, Appley v. Illinois Workers' Compensation Comm'n Austin Tyler Construction Company, Appellant. Kenneth Smith is Attorney for the Appellant. Brian Schell, Attorney for Appley. Mr. Smith, you may proceed. Good morning, Justices. Good morning, Mr. Schell. My name is Kenneth Smith. I am here for the Appellant Austin Tyler Construction. This is our appeal of the circuit courts overturning the decision of the Illinois Workers' Compensation Commission and the arbitrator in looking at this as to whether or not the commission's decision and weight of the evidence. It was not. I think all that the court did in the circuit court was reverse some of the credibility issues and relied on a totally different set of facts, which the arbitrator stated in her decision was not credible. I think even more astounding is that in the court's decision, they cite facts that aren't even in the record in this case. In terms of video evidence, a video number, I believe 38, it didn't depict what the judge said it depicts. And there's a lot of mistakes, evidentiary mistakes that's relied on by the judge. And I think the most glaring one is in regards to restrictions. The judge imposes his own restrictions, climbing restrictions that are not supported anywhere in the evidence of this case. The testimony of the own treating doctor, Dr. Armin Kalikian, was there was absolutely no climbing restrictions in this case. Secondly, the evidence deposition of the treating doctor, Dr. Armin Kalikian, after reviewing the job description and the functional capacity valuation, he stated the only restriction in this case was that the petitioner could not operate a clutch the circuit court imposes its own climbing restrictions. There was a lot of testimony pertaining to the petitioner testifying what his job duties were and what the company testified what his job duties were. And specifically, the arbitrator in her decision said, overall, the petitioner's testimony is not reliable. And most specifically, she was referring to the testimony that he had pertaining to his job duties. As stated, not only did Dr. Kalikian testify about the job duties, but there was a functional capacity valuation that was performed by an independent occupational therapist. And the functional capacity valuation itself, it did not rely on this specific job description. It relied on the general occupational job description. And that functional capacity valuation noted that he could perform 94.7% of his job duties. And it stated the only job duty he couldn't perform was operating a clutch. The record is uncontroverted that when he was eventually returned back to work in November of 2017, he was offered a job and put in a truck without a clutch. The respondent was always able to meet that permanent restriction. He worked one day, he went back to the doctor and tried to get additional restrictions. The doctor testified that after looking at the functional capacity valuation and the job description that he could perform the job. There was no basis to overturn this decision. The judge is, quite frankly, not relying on facts in evidence. That's why if you look at the judge's decision in this case, there's not one site to evidence in this case. There's no site to a climbing restriction in the record because he cannot cite a climbing restriction in the record. That is something the judge made up and it's not supported by the medical evidence. And it's not supported by the factual evidence in this case. That is why the commission and the arbitrator ruled the way they ruled. We would like the court to uphold the commission and the arbitrator's decision in regards to the permanency and also in regards to the issue of temporary total disability benefits. That also is an issue that was decided on credibility. And once again, the arbitrator stated overall the petitioner's testimony is not reliable. He produced, I believe, some text messages from June and July saying there's no work. And the company stated that that was sent because he never informed them that he had permanent restrictions and he could return back to work. Mr. Smith, can I ask you a question? On remand, what is it that the commission is supposed to do according to the judge's order? I think calculate a wage differential. Based on what? I don't know. I think it would probably be based on evidence of the only thing he can do is based on evidence of a vocational counselor. Well, the vocational counselor gave a spread, a spread of $13 to $17 an hour. Who has to make a determination as to what the amount is? It's something that the commission would have to do. So, that's not just a simple mathematical calculation. They actually have to make a finding of fact. I don't think they have to make a finding of fact in that. Well, what's a finding? It's either $13 to $17 an hour. It's a calculation. They can't award a wage differential based on $13 to $17 an hour. They have to declare an hourly amount in order to arrive at the calculation, don't they? Yes. Well, if they have to make that determination, it's a factual determination. Can you tell me how it is we have jurisdiction over this case? You have jurisdiction, number one, because the TTD issue, he issued dates on the TTD. That's just a calculation. He entered the dates on that. I think in terms of they just have to find a number. It's a calculation they have to do. They're not going to hear more evidence. Excuse me. If a remand is only for the purpose of making a simple factual calculation, then the cases suggest that we do have jurisdiction. But the cases hold that if on remand, the commission has to make a factual calculation based on the evidence, then in that particular case, the order is interlocutory. You don't get to appeal until the commission makes that calculation and awards the wage differential. I mean, I'm having difficulty with jurisdiction in this case. But I think the issue with TTD jurisdiction is clear. We don't exercise jurisdiction over individual portions of an award. Either we have jurisdiction over the whole thing or we don't. You can't have partial jurisdiction. And I think the court will have to decide whether or not they think that this is a ministerial calculation as some cases refer to, or is this a case that needs factual evidence to be determined by the commission. If somebody is saying that everything is reversed, just calculate something. I think it's up for the court to decide. But to come to that conclusion, you can't create evidence, which is what the judge did in this case, to reverse the decision. And thank you for your time. You'll have time in reply, Mr. Smith. Mr. Schell, you may proceed. You might want to address that first issue or the last issue being raised. Thank you very much. I plan to do that. Again, my name is Brian Schell. I represent the appellee in this case. May it please the court, opposing counsel, to address the issue of whether or not this is a ministerial calculation. In the interest of time, and I guess the petitioner's best argument that this is not an interlocutory decision, is that he found a job making wages at a Speedway gas station. So those are the wages that should be used to calculate the wage differential benefits. There is no question. There is a vocational counselor that gave a range. Vocational rehabilitation was never offered. The petitioner performed a self-directed job search and found a job making part-time wages, which those are the wages that should be used by this court when making a decision. And that's why this case is not based on an interlocutory order. And you guys can proceed with the decision. Going back to the argument... Does the record evidence, if I recall correctly, Shelly was earning at that time $9 an hour? Correct. And the range by a voc counselor was what, $13? $13 to $17. Okay, all right. To counsel's other point, I don't understand the argument of there's no evidence in the record to support a no-climbing work restriction when I refer you to Volume 1, page C-237. This is Petitioner's Exhibit 9G. Dr. Klickian specifically states, medium-level activity, no climbing truck or trailer, no clutch driving, and no shoveling over 100 pounds. This was dated November 6, 2017. So I don't know... I don't understand respondents' argument that there's not a shred of evidence of these permanent work restrictions when it is all over the record, especially in Dr. Klickian's deposition. There's no dispute in this case that the petitioner suffered a work-related left foot injury. He suffered a peroneal tendon tear that required surgical repair, extensive physical therapy, ultimately a functional capacity evaluation, which revealed he met a majority of his work demands, but he was limited to climbing and was to avoid the use of a clutch. Yes, this brings us to the reason why we're here today. After the functional capacity evaluation June 13, 2017, and the June 23, 2017 work restrictions from Dr. Klickian, the respondent, for some reason, did not accommodate these restrictions until November 2, 2017. When they finally did, the petitioner returned to work, performed his usual duties, including pre- and post-trip inspections of his truck. He dumped 19 loads that day, and it is uncontroverted that after that day of work, that one day of work, that his foot pain had increased throughout the day, and he sought additional medical treatment. He went for medical treatment at Physicians Media Care, who noted that his left foot was more swollen and restricted his ability to climb until he was seen by his orthopedic surgeon. He saw his orthopedic surgeon November 6, 2017, who continued his previous work restriction and added the permanent work restrictions of no climbing in or out of the truck or trailer. Respondent continues to argue semantics on this very important fact, because during their deposition of Dr. Klickian or the cross-examination, he was asked an incomplete hypothetical and asked to ignore certain facts. In response to that hypothetical question, he stated that other than he's able to climb based on the FCE, and there's no clutch, and he only lifts 10 pounds, I would say that would be okay. Well, the FCE, he was only climbing up and down eight rungs of a ladder two times, and he returned to work and had the complications, and that's when Dr. Klickian addressed the climbing restrictions. The hypothetical posed to Dr. Klickian removes all of those facts, and only then does the doctor agree that Petitioner could return to work, but still states other than he's able to climb, meaning that he has this climbing restrictions, which he explicitly states in the November 6, 2017 work restrictions. The fact remains that the petitioner is not able to continue working in his pre-morbid usual and customary line of work. Even the respondent's own witnesses corroborate the fact that they don't just climb in their trucks once per day and drive all day without getting in and out of the cab. Gary Schumal testified that the drivers have to clean the tailgate of the truck on site. That's at C-331 and C-332 of Volume 1. He testified that Austin Tyler, at the time of his testimony, he says that they currently don't climb into the trailers due to previous experiences with fellow drivers, and all but admitting that drivers climb into the trailers of their trucks. That's at C-1340 to 1341 of Volume 2. Mr. Chester testified that he personally climbs in and out of his truck at least one to ten times per day, depending on the job. He testified that other drivers may do that more when they clean the tailgate of their trucks on the job, so the locks would lock securely on the trucks, which would obviously require them to get in and out of their cab more. Respondents Exhibit 10, they submitted a video as well, and even in their own video, it shows the driver climbing in and out of the cab multiple times, spraying the tailgate with diesel fuel, shoveling the tailgate on the job, and climbing up and down the ladder multiple times when they're loading and unloading. Petitioner did shoot his own surveillance footage, which is Petitioner's Exhibit 38 that Council referenced, and that shows drivers on the job getting in and out of their cabs, climbing into the back of their trailers on job sites, and this was as of April 30 of 2018. Again, Respondents' own witnesses testified they knew drivers did this and purportedly instituted a policy to stop that due to previous experiences. In this case, which video, Mr. Schell, which video was it that you're saying? Claimant's video? Climbing in the truck? Yes, the very first few minutes, there was three videos on the CD of Petitioner's Exhibit 38. I'm not sure exactly which video it was, but within the first 30 seconds of one of the three videos, it shows a driver on the job site dumping dirt, climbing out of his truck, dumping the dirt, getting into the trailer, and you can see him shoveling away at something, and then he climbs out of the trailer. So this is a practice that these drivers had that their own drivers had admitted to. Now, they state not the trailer aspect of it, but they do state that they get out, Respondents' witnesses stated that they get out of their trucks to clean the tailgate while on site. The Commission's decision was against the manifest weight of evidence in this case, and there's nothing in the record to support its position that the job offered to Claimant was within his November 6, 2017 work restrictions. The Workers' Compensation Act is to be liberally construed and providing financial protection of the injured workers, and 30% loss of use of the foot does not protect Mr. Walsh in this case. He's no longer able to earn his union scale at the time of the hearing. He could only find a part-time position as a gas station clerk. The Circuit Court should be affirmed, and the only thing left for this Court to determine is a mere calculation of his wage loss at the time of injury. There's too many red herrings to mention in this case. Now, Counsel, that would be a comparison on the wage loss to the nine dollars an hour he's actually earned. Correct. Not the 13 to 17 that the vocational rehabilitation expert said he could Correct. That would be speculative, as the Petitioner was never offered vocational rehabilitation in this case, and based on a self-directed job search, was able to locate... Yeah, no, I understand. Okay. The red herrings in this case, the Commission brought up, are the fact that he could work between the summer of 2015. That has no bearing on the outcome of the case, as the Petitioner returned to medical treatment. After his return to medical treatment, Respondent's own Section 12 examiner agreed in 2016 that the ongoing injury was related to the original 2014 work injury. The fact that he worked in 2015 is irrelevant to his permanent work restrictions in 2017. Again, the trailer work is a red herring. Petitioner's Exhibit 38 shows, and Respondent's own Exhibit 10, their surveillance video that trailer has no bearing on it. Whether or not a driver climbs into the trailer or not, they still have to get in and out of their cab throughout the day, and he has a permanent work restriction of no climbing in or out of the truck. The job description is a red herring. Nobody knows when it was implemented. All the supervisors testified that they don't recall when it was instituted. There's no date on the job description. Council wants to talk about facts, not evidence. There is a job description and evidence, but nobody knows when it was put into place. The company policy of no climbing in and out of the trailer, that's another red herring, because as I've already gone over ad nauseum at this point, there's evidence of drivers doing that. There's testimony of, excuse me, there's evidence of drivers doing that. And nobody... Is that trailer evidence of climbing in and out of the trailer even have any relevancy in this case? No, because the permanent work restrictions are based on climbing in and out of the truck. So, whether or not you have to climb in the trailer is technically irrelevant, because you still have to climb in and out of the cab of your truck throughout the day. And again, nobody could testify on the date of implementation of this policy, and it was instituted after past experiences with fellow drivers. Well, I have a question for you. Is there anything... I mean, I've looked at videos in evidence. It seems to me, is there a prohibition by the employer to not clean the tailgate? No. Okay. Which necessitates getting out of the truck. Correct. Okay. Thank you. Okay. And I mean, with that, I believe the circuit court should be affirmed, and the calculation should be used with the current wages that he was earning at the time of the hearing. And I thank you all for your time. Thank you, Mr. Schell. Mr. Smith, you may reply. Everything he's just argued and everything the court did is just reversing the credibility issues made by the arbitrator in this case. There is no climbing restriction in this case. If you look at the record on page 853, which is Dr. Kalikian's own deposition, he stated, this is Dr. Kalikian's words, that after he reviewed the functional capacity evaluation, that the climbing demands of his job were met based on the functional capacity evaluation. That's on the record on page 583. He said, and this is Dr. Kalikian's testimony was after his last note in November of 2017. And Dr. Kalikian said he didn't have any reason to disagree with the assessments made in the functional capacity evaluation. That's on the record on page 852. And he said, based on the functional capacity evaluation, he could return to a medium level job, page 853. He later put a climbing restriction in November. And he stated that that was because the petitioner told him he had difficulty when he went back to work. But at his own deposition, which was after that November restriction, this is what Dr. Kalikian testified to. He agreed with the credibility issue that was made in this case. And the court cannot do that legally. The arbitrator wrote a very, very detailed decision. And she considered the petitioner's testimony. And she said it was not credible. You cannot get anywhere in this case without reversing the credibility determinations that was made by the arbitrator who sat through six witnesses who heard all the testimony and said the petitioner was not credible. And you cannot throw out a functional capacity evaluation, especially when at the deposition of Dr. Kalikian, he says there's no basis to disregard the functional capacity evaluations climbing restrictions. There was no climbing restrictions. The functional capacity evaluation, the only restriction was that he could not drive a clutch. When he returned to work in November, they gave him a truck without a clutch. And Dr. Kalikian said he went back in November after one day of work, and that's when he put in climbing restrictions. But at his test, at his deposition, he said, no, in looking at not only the job description, but also the functional capacity evaluation, there's no need for restrictions. That was before he put the No, his testimony was after. Yes. So he put in climate restrictions. And then at his evidence deposition, he looked at the actual functional capacity evaluation and said, no, there's no basis for these climate restrictions, and he doesn't need them, which is what he initially said in June of 2017. Also, thank you for your time. Okay. Any questions from the court for the questions for the council? No. Okay. Well, thank you, counsel, both for your arguments in this matter this morning. It will be taken under